KING, JUSTICE,
DISSENTING:
¶ 26. Because I believe that an appellate decision in this case is premature, and consequently should remand the case to the circuit court to be properly developed, I respectfully dissent.
¶27. I would allow this matter to proceed in the circuit court, where a full record could be developed. See M.R.A.P. 10(a) (the content of the appellate record “shall consist of designated papers and exhibits filed in the trial court, the transcript of proceedings, if any, and ... a certified *976 copy of the docket entries ... ”); Hardy v. Brock, 826 So.2d 71, 76 (Miss. 2002) (“Mississippi appellate courts may not consider information that is outside the record.”).
¶28. The majority decides this case ■without proper development in the circuit court.[20] In order for the majority to find insufficient grounds to justify judicial intervention, it must determine whether the actions at issue were manifestly unconstitutional. Such a determination depends partially on the facts of the case, which were completely undeveloped in the circuit court. For example, Rep. Hughes has not had the opportunity to provide evidence that members of the House may be uninformed as to the text of the bills, or that the machine’s speed caused confusion or misunderstanding of the bills. Pleadings must only contain “a short and plain statement of the claim showing that the pleader is entitled to relief.” Miss. R. Civ. P. 8(a)(1). At the pleading stage, a party is required only to place the defendant or respondent “on reasonable notice of the claims against” him and “to demonstrate that [the plaintiff or petitioner] has alleged a recognized cause of action upon which, under some set of facts, he might prevail.” Children’s Med. Grp., P.A. v. Phillips, 940 So.2d 931, 934 (Miss. 2006). Thus, Rep. Hughes was not required to allege or prove specific facts. It was thus not necessary at this juncture that Rep. Hughes conduct extensive investigations and discovery in order to determine whether or how many House of Representative members encountered problems due to the alleged incoherent reading of the bills. He needed only to make allegations sufficient to put Speaker Gunn on reasonable notice of his claims, which he has done. As such, the record should be developed in the circuit court, so that Rep. Hughes may be afforded the opportunity to gather evidence that the machine reading the bills resulted in problems for any representatives and/or was unconstitutional for any number of reasons, and for Speaker Gunn to be afforded the opportunity to gather evidence that it did and was not.
¶ 29. Moreover, Rep. Hughes clearly alleged critical harm[21] in his petition, stating in that petition that “[b]y failing to follow the letter and spirit of the Mississippi Constitution and having the bills read aloud for the body in a manner so they can be understood, there is irreparable harm which has occurred and will continue to occur, all as a direct and proximate result of the actions and inactions of’ Speaker Gunn. But such was impossible for him to prove because this Court denied him the opportunity to develop his case in the circuit court.
¶ 30. Moreover, the circuit court was not only prevented from developing the facts in this case, it was not allowed to issue any sort of final judgment applying the law from which we can find error. It is the role of the judiciary to apply the law to the facts of a particular case; this Court does not issue advisory opinions and in cases such as this, the trial court is the trier of *977 fact and the original court assigned to apply the law to the facts. See Ramsey v. Auburn Univ., 191 So.3d 102, 112 (Miss. 2016) (where circuit court did not address certain issues and the appellant essentially asked this Court to preemptively resolve those issues, this Court noted that it does not issue advisory opinions).
¶ 31. Because this Court decides these issues preemptively and prematurely, without affording the parties the opportunity to develop the facts, and without allowing the circuit court to apply the law to those developed facts, I respectfully dissent. I would remand the case for further proceedings in the circuit court.
KITCHENS, J., JOINS THIS OPINION.

. To be clear, I agree, as evinced by the Corrected En Banc Order in this case filed on March 24, 2016, that the pleadings were insufficient under Rule 65 to grant a Temporary Restraining Order (TRO). The pleadings failed to meet the heightened pleading standards required by Rule 65 to obtain a TRO. But once the stages of the litigation go beyond Rule 65 and a TRO, what we are dealing with are general pleading issues, in other words, simple notice pleading. Thus, I clarify that we are no longer examining the pleadings under Rule 65, but examining them as sufficient under notice pleading standards.

. Under Tuck, the court may examine legislative action where it exercises its constitutional responsibilities in a manifestly wrong manner that does critical harm to the legislative process. Maj. Op. ¶ 15.